UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| JAMES E. GARRETT, SANDRA A. GARRETT, LEVI E. GARRETT, <br><br>Plaintiffs, <br><br>vs. <br><br>RONALD STOCK, KRISTIN K. STOCK, <br><br>Defendants. | 3:22-CV-03003-RAL <br><br><br>OPINION AND ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiffs James E. Garrett, Sandra A. Garrett, and Levi E. Garrett (Garretts) sold their Sully County farmland to Defendants Ronald Stock and Kristin K. Stock (Stocks) with an agreement to lease back the land. Docs. 1, 5. The Garretts' failure to pay rent owed and the Stocks' conduct thereafter led to a state court case where the Stocks prevailed after a jury trial and from which the Garretts have appealed. In this federal diversity jurisdiction case, the Garretts claim that the Stocks breached a Real Estate Purchase Agreement, Farm Lease Agreement, and Escrow/Closing Agreement by settling a dispute with neighboring farmers resulting in movement of a fence line. Doc. 1 ¶¶ 4–27. The Garretts also claim that they were fraudulently induced into signing the contracts. Id. ¶¶ 28–33. The Stocks answered the Complaint, asserting the defense that the Garretts materially breached the agreements first by failing to make the 2021 lease payment due and counterclaimed for delinquent rent from the Garretts. Doc. 5. After the state jury trial verdict, the Stocks filed a Motion for Partial Summary Judgment, Doc. 27, arguing that the jury finding for the Stocks in state court has res judicata effect in this litigation, Doc. 28.

1

Because whether the Stocks or the Garretts materially breached the agreements is the essential issue in this litigation, the jury verdict constitutes a final judgment, the parties are the same, and the jury trial gave the parties a full and fair opportunity to litigate the issue, this Court grants the Motion for Partial Summary Judgment, Doc. 27, subject to reconsideration if the Supreme Court of South Dakota vacates or reserves the jury verdict.

I.  **Facts**

On June 20, 2019, the Garretts and the Stocks entered into three different agreements (Agreements):[1] (1) a Real Estate Purchase Agreement, Doc. 30-1, (2) a Farm Lease Agreement, Doc. 30-2, and (3) a Closing/Escrow Agreement, Doc. 30-3. Doc. 32 ¶ 1. Under these Agreements, the Stocks purchased Sully County farmland from the Garretts for just over $10 million, and leased the land back to the Garretts for five years at $650,000 per year, granting the Garretts an option to repurchase the property at any time during the lease term provided all contractual conditions were met, Doc. 30-1 ¶¶ 4, 6–7, 14, 22; Doc. 32 ¶¶ 3, 5; see also Docs. 30-2 to 30-3. The Garretts' attorney drafted all of these Agreements. Doc. 32 ¶ 2. Under the terms of the Agreements, the Garretts would make a single annual lease payment to their selected escrow agent, BankWest, Inc., to be distributed to RaboBank, which financed the Stocks' purchase of the property. Id. ¶¶ 4, 7.

The Garretts' leasehold interest and right to repurchase were contingent upon the Garretts paying the annual lease payment. Id. ¶ 8. Upon the payment of rent, the Garretts would enjoy peaceable and quiet title; the Stocks agreed not to sell, assign, or convey the ground other than the mortgage at RaboBank, and further agreed not to make changes to the property. Id. ¶¶ 10–12. By

---

[1] All three agreements were signed by Ron Stock, with Kristin Stock only signing the Real Estate Purchase Agreement and the Escrow/Closing Agreement. Doc. 30-1 at 10; Doc. 30-2 at 8; Doc. 30-3 at 11. For ease, this Opinion will refer to the Stocks collectively.

2

the terms of the agreements, the Garretts' annual lease payment was due on June 20 each year of the lease. Id. ¶ 14. The Farm Lease Agreement also provided that, in case of a default:

> [Garretts] have the right to cure the default or breach upon the same being corrected upon sixty (60) days notice. . . . [if such] nonpayment of rent shall continue for sixty (60) days after written notice thereof is given by the Lessor to the Lessees, then this lease shall terminate at the option of the [Stocks]. . . . [A]ny notices required or permitted hereunder shall be made by the escrow agent effective upon delivery to the parties.

Doc. 30-2 at 7.

The Garretts did not pay their annual lease payment in 2021 or 2022. Doc. 32 ¶ 15. On August 27, 2021, Ron Stock gave actual notice to the Garretts via certified mail, signed for by Levi Garrett, stating that the Garretts were in default for having not paid their 2021 rent in June and giving them 45 days to cure. Doc. 31 at 2–3. Shortly after sending this letter, the Stocks in September 2021 settled a lawsuit with neighboring property owners regarding a claim of encroaching fence lines. Doc. 32 ¶ 16. The Garretts argue that because notice did not come from the escrow agent and did not give them the contractual 60 days from the receipt of notice to cure their default, they were then excused from their responsibility to cure their failure to pay rent when the Stocks settled the lawsuit. Id.; Doc. 30-7.

In January 2022, the Garretts filed this lawsuit, claiming that settling of the fence line dispute deprived the Garretts of part of the land, removed the property's gates, and destroyed the property's fence constituting a breach of the three contracts.[2] Doc. 1. The Garretts did not pay rent in 2022 either, prompting the Stocks to initiate an eviction action against the Garretts in June 2022 in the Sixth Judicial Circuit in South Dakota. Doc. 32 ¶ 17; Doc. 30-8. The Garretts claim

---

[2] The Garretts fraudulent inducement claim likewise relates to the contractual promise that the Stocks would not interfere with the Garretts' use of the property. Doc. 1 ¶ 29 ("[T]he Defendant [sic, presumably meaning both defendants] specifically indicated to Plaintiff [sic, likely meaning Plaintiffs] that they would not interfere with the Plaintiffs' rights to use the property . . . ").

3

that further breaches by the Stocks in 2022, namely plowing of fields the Garretts allegedly had already planted, excused them from paying rent in 2022. Doc. 33-6 at 7.

In December 2022, the forcible entry and detainer claim the Stocks brought in state court went to jury trial. Doc. 32 ¶ 22. After a two-day trial, the jury returned a verdict entitling the Stocks to immediate possession of the land, and a judgment of eviction was entered. Id.; Doc. 30-13. The verdict form read simply: "We, the jury, duly empaneled to try the issues in this case: [] Find that the Plaintiffs are entitled to immediate possession of the land. []  √  Yes  ___ No." Doc. 33-5. The Garretts have appealed the jury's finding to the Supreme Court of South Dakota, and that appeal is pending. Doc. 31 at 5; Doc. 33-4.

In March 2023, the Stocks filed this Motion for Partial Summary Judgment requesting that this Court use the jury's finding in the state court proceeding to determine all but the issue of damages on the Stocks' counterclaim. Doc. 27. The Garretts oppose the motion. Doc. 31. For the reasons stated below, this Court now grants the Stocks' Motion for Partial Summary Judgment subject to reconsideration if the Supreme Court of South Dakota were to vacate or reverse the jury verdict.

## II. Motion for Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); McManemy v. Tierney, 970 F.3d 1034, 1037 (8th Cir. 2020). Rule 56(a) places the burden on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party must establish that a material fact is genuinely disputed by either "citing to particular parts of materials in the record"

4

or "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A), (B); see also Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials" in their pleading but "must set forth specific facts showing that there is a genuine issue for trial." Gacek, 666 F.3d at 1145–46 (citing Anderson, 477 U.S. at 256); see also Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials). In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); Taylor v. Riojas, 141 S. Ct. 52, 53 n.1 (2020) (per curiam); Intel Corp. Inv. Pol'y Comm. v. Sulyma, 140 S. Ct. 768, 779 (2020).

### III. Discussion

The Stocks argue that the doctrine of res judicata precludes relitigation of the underlying issues, namely which party breached the Agreements. Doc. 28 at 6–7. The concept of res judicata includes both claim preclusion and issue preclusion. Taylor v. Sturgell, 553 U.S. 880, 892 (2008); Am. Fam. Ins. Grp. v. Robnik, 787 N.W.2d 768, 774 (S.D. 2010). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit[,]'" while "[i]ssue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor, 553 U.S. at 892 (quoting New Hampshire v. Maine, 532 U.S. 742, 748–49 (2001)); see also Healy v. Fox,

46 F.4th 739, 745 (8th Cir. 2022). As the Supreme Court of the United States has stated: "[b]y 'precluding parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.'" Id. (cleaned up) (quoting Montana v. United States, 440 U.S. 147, 153–54 (1979)). Here, the Stocks argue issue preclusion. Doc. 28 at 6–7.

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Therefore, this Court looks to South Dakota law to define the preclusive effect of the prior final judgment the Stocks received against the Garretts. See Hanig v. City of Winner, 527 F.3d 674, 676 (8th Cir. 2008) (stating that federal courts "must give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . [T]he issue we must decide turns on the South Dakota law of issue and claim preclusion." (cleaned up and citations omitted)).

While the Supreme Court of South Dakota recognizes the difference between claim and issue preclusion, see Merchs. State Bank v. Light, 458 N.W.2d 792, 793–94 (S.D. 1990), it has applied the same four elements in both claim and issue preclusion cases:

> (1) the issue in the prior adjudication must be identical to the present issue, (2) there must have been a final judgment on the merits in the previous case, (3) the parties in the two actions must be the same or in privity, and (4) there must have been a full and fair opportunity to litigate the issues in the prior adjudication.

Dakota, Minn. & E. R.R. Corp. v. Acuity, 720 N.W.2d 655, 661 (S.D. 2006). When applying the elements of res judicata, the Supreme Court of South Dakota has stated, "a court should construe the doctrine liberally, unrestricted by technicalities. However, because the doctrine bars any

subsequent litigation, it should not be used to defeat the ends of justice." People ex rel. L.S., 721 N.W.2d 83, 90 (S.D. 2006).

The last two requirements of res judicata can hardly be argued in this case. The third element is satisfied because the parties in these two lawsuits are the same: the Garretts and the Stocks. The fourth element of res judicata is satisfied because there was a jury trial in the state court case between these parties concerning the agreements and rights thereunder. After all, there is no better opportunity to litigate an issue fully and fairly than to present questions of fact to a jury and to have a verdict rendered. The first two elements require a bit more discussion.

### A. Whether the Issue in the Prior Adjudication is Identical

"Res judicata applies only if the second action is brought on the same 'cause of action' as the first." Hicks v. O'Meara, 31 F.3d 744, 746 (8th Cir. 1994) (citation omitted). "A cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce." Merchs. State Bank, 458 N.W.2d at 794. South Dakota has often stated that the test to determine whether a cause of action is the same is "whether the wrong sought to be redressed is the same in both actions." Hicks, 31 F.3d at 746; see also Nelson v. Hawkeye Sec. Ins. Co., 369 N.W.2d 379, 381 (S.D. 1985); Hanig, 527 F.3d at 676. "To make this determination, South Dakota law requires we look to the underlying facts which give rise to each cause of action." Hicks, 31 F.3d at 746; see Healy, 46 F.4th at 744 (citations omitted); Frigaard v. Seffens, 599 N.W.2d 646, 648–49 (S.D. 1999) (applying the four-element test and stating "[t]he *same transaction* is again at issue involving precisely the same subject matter and parties" (emphasis added)); Bank of Hoven v. Rausch, 449 N.W.2d 263, 266–67 (S.D. 1989) (holding res judicata applied since the second claim "*arose out of the transaction or occurrence* that was the subject matter of the [other party's] claim" (emphasis added)). The United States Court of Appeals for the Eighth Circuit has noted that South

Dakota res judicata law uses language and analysis consistent with the "nucleus of operative fact" approach. Ruple v. City of Vermillion, S.D., 714 F.2d 860, 861 (8th Cir. 1983) (noting South Dakota adheres to the practice definition of "cause of action" in "that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata.").

The state court action bears remarkable similarity to the issues presented in this case. The complaint filed in state court claims a violation of the Farm Lease Agreement because the Garretts did "not timely pa[y] rent, and [are] delinquent to [the Stocks], for the years of 2021 and 2022." Doc. 30-8 ¶¶ 6–8. The Garretts' defense on which the jury was instructed was that "[u]ncured, material breaches of a contract excuse the other party from performance." Doc. 35-1 at 11. The state trial judge gave an instruction summarizing the issue being tried as follows:

> This is a forcible entry and detainer case brought by Ronald Stock and Kristin Stock, who are considered to be the Plaintiffs, against James Garrett, Sandra Garrett, and Levi Garrett, who are considered to the be the Defendants.
> The Plaintiffs [the Stocks] allege that Defendants [the Garretts] materially breached the terms of a written Lease Agreement between the parties for the lease of parcels of land in Sully County that are named in the Lease agreement.
> Plaintiffs [the Stocks] are requesting immediate possession of the land. Defendants [the Garretts] deny that they have materially breached the Lease Agreement but assert that if the Defendants [the Garretts] have materially breached the Lease Agreement, the Plaintiffs [the Stocks] first materially breached the Lease Agreement, thereby excusing the Defendants [the Garretts] material breach and request to maintain possession of the land.

Doc. 35-1 at 3. The Garretts' response opposing partial summary judgment on the federal case quotes excerpts of testimony from the jury trial transcript, that according to the Garretts show the Stocks to have materially breached the agreement and to have given improper notice of breach. Doc. 31 at 2–5. The relevant timeline was the following:

- June 20, 2021—Garretts fail to pay 2021 rent;

- August 2021—Stocks give imperfect, but actual, notice of default;

8

- September 2021—Stocks settle fence line dispute before the opportunity to cure closed;
- January/February 2022—Fence line gets moved reducing leasehold interest;
- March 2022—Garretts prepare fields for planting forage crop;
- Early June 2022—Stocks disc under the Garretts' forage crop;
- June 20, 2022—Garretts fail to pay 2022 rent.

The Garretts quote their counsel's cross-examination of Ronald Stock presenting to the jury evidence that Stock settled the fence dispute within days of giving notice of default and before the contractual cure period elapsed. Id. at 3; Doc. 33-2. The state court jury must have rejected the Garretts' claim of material breach by the Stocks in returning a verdict for the Stocks. Doc. 33-5.

In the state court litigation, the state judge found and instructed the jury that "[t]he Farm Lease Agreement, the Closing Escrow Agreement, and Real Estate Purchase Agreement are all valid contracts." Doc. 35-1 at 6. Given how the trial judge instructed the jury, the jury could only reach its verdict upon concluding that the Garretts materially breached the Farm Lease Agreement before the Stocks did. See generally id. The jury held that the Stocks were entitled to immediate possession of the property. Doc. 33-5. Thus, the very issues presented in this federal lawsuit were framed by the state court jury instructions and tried to and decided by the jury.

The issues needed to be determined in this case are (1) whether the three contracts are valid and enforceable promises (which the state trial judge decided), (2) who first materially breached the agreements in 2021 (which the jury necessarily decided in favor of the Stocks), and (3) whether the injured party suffered damages based on that breach (on which summary judgment is not sought). These were the same issues in the state case. Notably, the Garretts admit in this matter that the relevant sections of the Real Estate Purchase Agreement, Farm Lease Agreement, and

9

Escrow/Closing Agreement they allege were breached were contingent upon the payment of rent. Doc. 32 ¶ 7. The state court jury trial and this case concern the same nucleus of operative facts.

Count IV of the Complaint in this case claims that the Stocks materially breached the Agreements and fraudulently induced the Garretts into signing, but the fraudulent inducement claim is plead in vague terms, relates in part to the Stocks later conduct in entering onto the property and is not confined to the fence-line dispute. Doc. 1 ¶¶ 28–33. The Garretts' fraudulent inducement claim in this case is awkward, asserting in part that the Stocks disruption of their leasehold interest after the agreements were entered into constitute fraudulent inducement. Id. Usually, fraudulent inducement is grounds to void the contract. Of course, consent, an essential element to contract, "is not real or free" when obtained through fraud. SDCL § 53-4-1(2); 35-1 at 6. A contract fraudulently induced is a voidable contract but is otherwise valid so long as it is not "voided at the option of one of the parties." Nature's 10 Jewelers v. Gunderson, 648 N.W.2d 804, 807 (S.D. 2002); Granite Buick GMC, Inc. v. Ray, 872 N.W.2d 810, 814 (S.D. 2015); SDCL § 53-4-1(2). If a contract is voided, it is then invalid. Nature's 10 Jewelers, 648 N.W.2d at 807. On the other hand, if a voidable contract is ratified by the parties, "the contract becomes a fully valid legal obligation." First State Bank of Sinai v. Hyland, 399 N.W.2d 894, 898 (S.D. 1987); see also Bank of Hoven, 382 N.W. at 41. The state court determined, and instructed the jury, that all three agreements were "valid contracts," Doc. 35-1 at 6, which resolves that matter. Thus, even with the added claim of fraudulent inducement,[3] this case, like the state case, revolves around the same

---

[3] If the Garretts are claiming something more than fraudulent inducement, they have not met the standard to plead fraud with particularity as required in Federal Rule of Civil Procedure 9(b) and cannot claim fraudulent or negligent non-performance of the contract under South Dakota law. See Dziadek v. Charter Oak Fire Ins. Co., 4:11-CV-4134-RAL, 2016 WL 16343825, at *4 (D.S.D. Apr. 22, 2016) (noting that the independent tort doctrine precludes actions for negligent performance of contract); Grynberg v. Citation Oil & Gas Corp., 573 N.W.2d 493, 500 (S.D. 1997) ("Punitive damages may arise in these situations when the complaining party can prove an

10

underlying facts, the same wrong, and the same evidence. See Hicks, 31 F.3d at 746 (finding that res judicata did not apply when "[t]he two claims are supported by different underlying facts; they involve different wrongs and different evidence."). As such, the two causes of action are the same and the first element of res judicata has been met.

### B. Whether there was a Final Judgment

Finally, as their primary argument the Garretts assert that the state court jury verdict is not a final judgment because the Garretts have appealed. Generally, a final judgment is one that is "sufficiently firm to be accorded conclusive effect." Bank of Hoven, 449 N.W.2d at 265 (citation omitted). "The criteria for determining finality are whether the parties were fully heard and whether the decision was deliberated and firm, subject to appeal, and procedurally definite." Riis v. Shaver, 458 F. Supp. 3d 1130, 1165 (D.S.D. 2020) (cleaned up and citation omitted). Here, the Garretts were fully heard on who materially breached the Farm Lease Agreement first. The jury deliberated on the facts of the case and rendered a verdict for the Stocks. The Garretts filed a notice of appeal framing the question "whether or not the notice provision of the lease agreement must be strictly complied with." Doc. 31 at 7.

Over 120 years ago, the Eighth Circuit in Ransom v. City of Pierre recognized that a party may plead in a federal case a final judgment "in bar to another suit between the same parties and upon the same cause of action during the pendency of an appeal therefrom." 101 F. 665, 670 (8th Cir. 1900). The existence of a pending appeal under Eighth Circuit precedent even a century later does not bar application of collateral estoppel principles. In re Cochrane, 124 F.3d 978, 982 (8th

---

independent tort that is separate and distinct from the breach of contract. While the independent tort may occur at the time of and in connection with the breach, or may arise out of the same transaction, it is not committed merely by breaching the contract, even if such act is intentional." (cleaned up and citation omitted)).

11

Cir. 1997) ("The bankruptcy court did not err in observing that collateral estoppel may apply to a trial court's ruling on the merits of an issue notwithstanding the pendency of an appeal from that ruling."); Charles Alan Wright et al., 18A Federal Practice and Procedure: Jurisdiction and Related Matters § 4433 (3d ed. 2007) ("The Supreme Court long ago seemed to establish the rule that a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo."). The Restatement (Second) of Judgments, which the Supreme Court of South Dakota has cited favorably in its collateral estoppel jurisprudence, supports this conclusion. See Bank of Hoven, 449 N.W.2d at 265. The Restatement reasons that, while waiting for an appeal to conclude may be the best course of action, a trial court judgment on appeal is still a final decision for res judicata purposes because "[p]ostponing finality of a judgment for purposes of res judicata until appellate review is concluded tends toward duplication of litigation, or its protraction, with the second action marking time until the entire process of appeal is completed in the first action." Restatement (Second) of Judgments § 13 cmt. f (Am. L. Inst. 1982). As such, despite the pending appeal, the judgment of the state trial court and the verdict are considered final for collateral estoppel and res judicata purposes. Therefore, the final element of res judicata has been met.

### IV. Conclusion

Res judicata applies here because the issues presented in this case mirror those in the state case, the verdict rendered by the state court jury is a final judgment despite the pending appeal, the parties are the same, and the parties had a full and fair chance to litigate the state court matter. The state litigation established that the Garretts materially breached the agreements by failing to timely pay the amounts required in the Real Estate Purchase Agreement, Farm Lease Agreement, and Escrow/Closing Agreement, thus excusing the Stocks from thereafter performing their duties

outlined in those contracts. Therefore, summary judgment enters on Counts I, II, III, and IV of the Complaint in favor of the Stocks. Likewise, the Stocks are entitled to summary judgment on their counterclaim that the Garretts breached by not paying rent with the question of damages remaining open.

Because of on the pending appeal, however, this Court will stay any further proceeding in this case awaiting the decision of the Supreme Court of South Dakota.[4] If that Court reverses the final decision issued in 59CIV22-000007 from the Sixth Judicial Circuit Court of South Dakota, this Court will entertain a motion to vacate its entry of summary judgment for the Stocks and against the Garretts. If the Supreme Court of South Dakota affirms, this Court will take up the question of the Stocks recoverable damages unless that question, plead as part of the Stocks' state court action, is determined in state court.

For the reasons described above, it is hereby

ORDERED that Defendants and Counterclaim Plaintiffs' Motion for Partial Summary Judgment, Doc. 27, is granted.

DATED this 7th day of July, 2023.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

---

[4] Such a stay likely benefits Plaintiffs James Garrett and Levi Garrett who were convicted on counts of false statement in connection with federal crop insurance programs in this Court and are presently serving federal prison sentences. Inmate Locator, Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last visited June 30, 2023) (Register Numbers: 12598-073 and 12597-073); United States v. Garrett, 3:21-CR-30091-RAL, Docs. 102–03; see also United States v. Garrett, 3:21-CR-30091-RAL, 2023 WL 241831 (D.S.D. Jan. 18, 2023); United States v. Garrett, 3:21-CR-30091-RAL, 2023 WL 3815388 (D.S.D. June 5, 2023).